**In re The EXPRESS–NEWS CORPORA-TION and Cecil Clift, Petitioners.**

No. 82–1599
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1982.

Lang, Cross, Ladon, Boldrick & Green, Mark J. Cannan, San Antonio, Tex., for petitioners.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A reporter and the newspaper for which he works, denied leave to interview jurors discharged after serving in a criminal trial, challenge the constitutionality of a district court rule that forbids any person to interview any juror concerning the deliberations or the verdict of the jury, except by leave of court. We hold that the rule and the denial of leave to the petitioners are unconstitutional as applied to the interviews sought to be conducted.

Two defendants, Ruben Medrano-Hiracheta and David Suniga-Salinas, were charged in the Western District of Texas with transporting and conspiracy to transport illegal aliens. A jury found both guilty and was discharged. Local Rule 500–2 of the Western District provides that no person shall "interview . . . any juror, relative, friend or associate thereof . . . with respect to the deliberations or verdict of the jury in any action, except on leave of court granted upon good cause shown." Two weeks after the verdict, the Express News Corporation, publisher of the San Antonio Express, and Cecil Clift, a reporter for The Express, filed a motion to vacate the restrictions on the press and asked for leave to interview the jurors in connection with the preparation of a news-story. The court denied the motion.

The Express News Corporation and Clift both contend that they have a right under the first amendment to gather news and that the rule and the order denying leave to interview the jurors violates that constitutional right.[1]

The first amendment's broad shield for freedom of speech and of the press is not limited to the right to talk and to print. The value of these rights would be circumscribed were those who wish to disseminate information denied access to it, for freedom to speak is of little value if there is nothing to say. Therefore, the Supreme Court recognized in *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626, 639 (1972), that news-gathering is entitled to first amendment protection, for "without some protection for seeking out the news, freedom of the press could be eviscerated."

"The operation of the . . . judicial system itself . . . is a matter of public interest, necessarily engaging the attention of the news media," the Supreme Court said, overturning the criminal conviction of a newspaper for publishing information about a confidential judicial misconduct investigation. *Landmark Communications v. Virginia,* 435 U.S. 829, 839, 98 S.Ct. 1535, 1542, 56 L.Ed.2d 1, 10 (1978). The publication of such information "clearly served those interests in public scrutiny and discussion of governmental affairs which the First Amendment was adopted to protect." *Id.* A year later, the Court held that a newspaper could not be punished for publishing lawfully obtained information identifying a juvenile defendant. *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979). In *Globe Newspaper v. Superior Court,* —— U.S. ——, ——, 102 S.Ct. 2613, 2624, 73 L.Ed.2d 248, 262 (1982), the Court noted that an inhibition of press news-gathering rights must be necessitated "by a compelling governmental interest,

---

1. No question is raised concerning the standing of the petitioners, nor could there be. *Association of Data Processing Service Orgs. Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). *See also United States v. Gurney,* 558 F.2d 1202, 1206 (5th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). Mandamus is the appropriate remedy. *Sanders v. Russell,* 401 F.2d 241 (5th Cir.1968); *United States v. Sherman,* 581 F.2d 1358 (9th Cir.1978).

and ... narrowly tailored to serve that interest."

Government-imposed secrecy denies the free flow of information and ideas not only to the press but also to the public. The public right to receive information has been repeatedly recognized and applied to a vast variety of information.[2]

The judiciary, like the legislative and judicial branches, is an agency of democratic government. The public has no less a right under the first amendment to receive information about the operation of the nation's courts than it has to know how other governmental agencies work and to receive other ideas and information. Extending these principles to juror interviews, the Ninth Circuit Court of Appeals has held unconstitutional a district court order forbidding any person, including members of the news media, from contacting jurors after the return of their verdict. *United States v. Sherman,* 581 F.2d 1358 (9th Cir. 1978).

Like other first amendment rights, the right to gather news is not, of course, absolute. *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). Nor does it guarantee journalists access to sources of information not available to the public generally. *Branzburg,* 408 U.S. at 684, 92 S.Ct. at 2658, 33 L.Ed.2d at 641; *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 427 (5th Cir.1981) (press had no constitutional right to access to trial exhibits beyond that enjoyed by public); *Garrett v. Estelle,* 556 F.2d 1274, 1277 (5th Cir. 1977), *cert. denied,* 438 U.S. 914, 98 S.Ct. 3142, 57 L.Ed.2d 1159 (1978) (sustaining state denial of the televising of an execution). As petitioners expressly recognize, there are countervailing considerations that, under the proper circumstances, outweigh their first amendment rights. Thus, the accused's sixth amendment right to a fair trial must be safeguarded. *United States v. Gurney,* 558 F.2d 1202, 1210 (5th Cir.1977), *cert. denied, Miami Herald Pub. Co. v. Krentzman,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). To ensure the fairness of a pending trial, the court may restrict the extrajudicial statements and actions of the trial's participants. *Gurney,* 558 F.2d at 1210; *United States v. CBS,*

2. *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) (right to receive handbills); *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945) (rights of workers to hear labor organizer); *Marsh v. Alabama,* 326 U.S. 501, 505, 66 S.Ct. 276, 278, 90 L.Ed. 265, 267 (1946) (right to receive religious literature on streets of a company-owned town); *Lamont v. Postmaster General,* 381 U.S. 301, 307, 85 S.Ct. 1493, 1496, 14 L.Ed.2d 398, 402 (1965) (right to receive communist political publications from abroad); *Griswold v. Connecticut,* 381 U.S. 479, 482, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to receive information about contraception); *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542, 549 (1969) (right to receive and privately possess obscene films); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 390, 89 S.Ct. 1794, 1807, 23 L.Ed.2d 371, 389 (1969) (right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences by air); *Kleindienst v. Mandel,* 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (right of academic audience to hear a presentation by an alien seeking temporary entry displaced by plenary power of Congress to make rules about admission of aliens); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 757, 96 S.Ct. 1817, 1823,

48 L.Ed.2d 346, 355 (1976) (right to receive advertising about prescription drug prices); *Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (right to receive information about property for sale through "For Sale" or "Sold" signs on residential property); *Carey v. Population Services International,* 431 U.S. 678, 701–702, 97 S.Ct. 2010, 2024–2025, 52 L.Ed.2d 675, 694–695 (1977) (right to receive advertising about contraceptives); *Bates v. State Bar of Arizona,* 433 U.S. 350, 384, 97 S.Ct. 2691, 2791, 53 L.Ed.2d 810, 836 (1977) (right to receive information about availability and terms of legal services); *First National Bank v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (spending corporate funds to communicate to the public about voting on referenda issues); *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) (public service commission ban on the inclusion of pro-nuclear power materials with utility company monthly bills held invalid, the Court noting the First Amendment's role in affording the public access to discussion, debate, information, and ideas); *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (advertising that promotes the use of electricity).

*Inc.,* 497 F.2d 102, 106–07 (5th Cir.1974). The media must respect the decorum of the courtroom. *See Sheppard v. Maxwell,* 384 U.S. 333, 350, 86 S.Ct. 1507, 1515–16, 16 L.Ed.2d 600, 613 (1966). And jurors, even after completing their duty, are entitled to privacy and to protection against harassment. *See Gurney,* 558 F.2d at 1210 & n. 12.

■ A court rule cannot, however, restrict the journalistic right to gather news unless it is narrowly tailored to prevent a substantial threat to the administration of justice. *See United States v. CBS, Inc.,* 497 F.2d at 104. Neither the district court's rule nor its order applying the rule have been so fashioned. The rule is unlimited in time and in scope, applying equally to jurors willing and anxious to speak and to jurors desiring privacy, forbidding both courteous as well as uncivil communications, and foreclosing questions about a juror's general reactions as well as specific questions about other jurors' votes that might, under at least some circumstances, be inappropriate.

■ A court may not impose a restraint that sweeps so broadly and then require those who would speak freely to justify special treatment by carrying the burden of showing good cause. The first amendment right to gather news is "good cause" enough. If that right is to be restricted, the government must carry the burden of demonstrating the need for curtailment. *See United States v. Sherman,* 581 F.2d at 1361. No such demonstration has been made in this case.

■ Absent good cause for restraint, petit jurors are free to discuss their service if they choose to do so, and the rule indeed

implicitly sanctions juror's conversations with their relatives, friends, and associates. While a statute makes it unlawful to record or listen to the proceedings of a grand or petit jury, 18 U.S.C. § 1508 (1976), the statute does not forbid jurors to speak after their deliberations are completed. The Federal Rules of Criminal Procedure forbid grand jurors to "disclose matters occurring before the grand jury," but also provide, "No obligation of secrecy may be imposed on any person except in accordance with this rule." Fed.R.Crim.P. Rule 6(e)(1).

The rule cannot be justified on the thesis that Rule 606(b) of the Federal Rules of Evidence prevents the use of juror testimony to impeach the jury's verdict. Petitioners do not intend to impeach the verdict. In *United States v. Riley,* 544 F.2d 237, 242 (5th Cir.1976), *cert. denied,* 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777 (1977) and *O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1309–1310 (5th Cir.1977), we affirmed denials of requests for post-verdict juror interviews designed to obtain evidence of improprieties in the deliberations.[3] Such interviews would "denigrate jury trials by afterwards ransacking the jurors in search of some ground ... for a new trial." 554 F.2d at 1310. But the interviews in this case are sought for a different purpose.

We invited the United States Attorney for the Western District of Texas, as amicus curiae, to express his views. The brief filed in response to that request supports the validity of the rule and argues that freedom of debate and independence of thought would be stifled if jurors were made to feel "that their arguments and ballots were to be freely published to the world." *Clark v. United States,* 289 U.S. 1, 13, 53 S.Ct. 465, 469, 77 L.Ed. 993, 999

---

**3.** This was also the purpose of the interviews denied in *King v. United States,* 576 F.2d 432, 438 (2d Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978); *United States v. Franks,* 511 F.2d 25, 38 (6th Cir.1975), and *Miller v. United States,* 403 F.2d 77 (2d Cir. 1968), cited by respondent on this point. We simply feel that these cases are inapposite. Petitioners seek these interviews not to impeach the verdict but instead to report on the jury's activities. Dictum in *Bryson v. United States,*

238 F.2d 657, 665 (9th Cir.1956), *cert. denied,* 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 34 (1957), indicates that, in the particular circumstances presented by that case, an order prohibiting the press from interviewing jurors after the verdict was necessary to protect them from annoyance and harassment. We note that the court's holding in that case sustained only the validity of the district court's later refusal to admit a newspaper report of an interview.

(1932). We express no view concerning the validity of a rule narrowly tailored to prevent the disclosure of the ballots of individual jurors or some other paramount value. That unrestrained post-verdict inquiry into every juror's vote and every jury's deliberations in every trial might be harmful cannot validate a categorical denial of all access.

We do not intimate that jurors have any obligation whatever to talk to the news media or to anyone else about their service. The jurors' freedom of speech is also freedom not to speak, and the district court may so instruct the jurors in order to avoid the possible misunderstanding that jury service places them under some obligation to subject themselves to scrutiny or to submit to interview.

Petitioner's right to gather news was restricted in this case without any showing that the restriction was necessary. For this reason Local Rule 500–2 of the United States District Court for the Western District of Texas is declared unconstitutional as applied to the interviews proposed by Express News Corporation and Cecil Clift. The Court having confidence that the district court will vacate the order as applied to them, the writ need not issue.