William HAEBERLE and John W. Magee, Jr., Trading as Villanova Leasing Company, William Haeberle and Harman S. Spolen, Trading as Wayne Leasing Co. and William Haeberle and Oliver Vanderbilt, Trading as Windsor Leasing Company, Plaintiffs-Appellants,

v.

TEXAS INTERNATIONAL AIRLINES, Defendant-Appellee.

No. 83–2503
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

August 23, 1984.

Drinker, Biddle & Reath, Lawrence J. Fox, Philadelphia, Pa., Stradley, Barnett & Stein, William J. Stradley, James Douglas Ogle, Houston, Tex., for plaintiffs-appellants.

Sowell, Ogg & Hinton, Michael L. Landrum, Jack C. Ogg, Houston, Tex., for defendant-appellee.

Before RUBIN, JOLLY, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district court denied an attorney leave to interview jurors in order to learn "some lesson" about the basis for its verdict adverse to his client. We affirm the order and we confirm the constitutionality of the local rule forbidding counsel to interview jurors without leave of court.

After a judgment was rendered against three limited partnerships in conformity with the jury's answers to special interrogatories, their counsel sought leave to interview jurors willing to discuss the trial. The petition stated that the interviews were not sought to impeach the verdict, but to determine on what basis it was reached:

> It was obvious that the jury's verdict was so contrary to plaintiffs [sic] and defendant's expectations as to the result, that some lesson for both counsel and plaintiffs could be learned from such an inquiry .... [Without] an opportunity to chat with jurors who were agreeable to do so, ... Plaintiffs and their counsel [would be] left with no more than idle speculation as to the basis on which the result was reached.

The motion was unopposed, but the district court denied leave without an opinion, presumably pursuant to its local rule 2(f), which provided:

> neither the attorney nor any party to an action nor any other person shall himself or through any investigator or other per-

son acting for him interview, examine or question any juror, relative, friend or associate thereof either during the pendency of the trial or with respect to the deliberations or verdict of the jury in any action, except on leave of Court granted upon good cause shown.[1]

■ Federal courts have generally disfavored post-verdict interviewing of jurors. We have repeatedly refused to "denigrate jury trials by afterwards ransacking the jurors in search of some new ground, not previously supported by evidence, for a new trial." *United States v. Riley,* 544 F.2d 237, 242 (5th Cir.1976), *cert. denied,* 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777 (1977). Prohibiting post-verdict interviews protects the jury from an effort to find grounds for post-verdict charges of misconduct, reduces the "chances and temptations" for tampering with the jury, increases the certainty of civil trials, and spares the district courts time-consuming and futile proceedings. *O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1310 n. 4 (5th Cir. 1977). We have therefore uniformly refused to upset the denial of leave to interview jurors for the purpose of obtaining evidence of improprieties in the deliberations unless specific evidence of misconduct was shown by testimony or affidavit.[2]

■ The petition presented to the district court in this case, however, specifically stated that leave was sought for the purpose of educating counsel and not to impeach the jury's verdict, and counsel invokes freedom of speech in support of that goal. Weighty first amendment interests

may be harmed by inhibiting the flow of information from jurors to the public. To protect those interests, we declared the denial of leave for a reporter to interview jurors unconstitutional in *In re Express-News Corp.,* 695 F.2d 807 (5th Cir.1982).[3] As we observed there,

> The judiciary, like the legislative and judicial branches, is an agency of democratic government. The public has no less a right under the first amendment to receive information about the operation of the nation's courts than it has to know how other governmental agencies work and to receive other ideas and information. 695 F.2d at 809.

We also cautioned, however, that countervailing considerations may under proper circumstances outweigh the press's instrumental first amendment rights. Among those considerations are the accused's sixth amendment right to a fair trial and the jurors' interest in privacy and protection from harassment. *See United States v. Gurney,* 558 F.2d 1202, 1210 & n. 12 (5th Cir.1977), *cert. denied sub nom. Miami Herald Publishing Co. v. Krentzman,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). Accordingly, journalists' right to gather news from post-verdict juror interviews may not be restricted except by a rule "narrowly tailored to prevent a substantial threat to the administration of justice."

Unlike the reporter in *Express-News,* however, the petitioners in this case did not seek juror interviews in order to serve the

---

1. After the petition had been filed, but before the court ruled on it, the rule was amended to read:

> Except on leave of Court granted upon good cause shown, neither the attorney nor any party to an action nor any other person shall interview, examine or question any juror for the purpose of obtaining evidence of improprieties in the jury deliberations.

The petitioners point out that the rule in its present form might not require them even to seek leave to interview jurors for the purposes stated in their petition. They do not, however, contend that the district court's implicit decision to give the rule prospective application only was an abuse of discretion.

2. *E.g., United States v. Garcia,* 732 F.2d 1221, 1228 (5th Cir.1984); *Wilkerson v. AMCO Corp.,* 703 F.2d 184, 186 (5th Cir.1983); *Riley,* 544 F.2d at 242; *O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1309–10 (5th Cir.1977); *see also King v. United States,* 576 F.2d 432, 438 (2d Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978); *United States v. Franks,* 511 F.2d 25, 38 (6th Cir.1975), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1976).

3. *Cf., United States v. Sherman,* 581 F.2d 1358 (9th Cir.1978).

general public's right to receive information about judicial proceedings. Rather, they sought information to satisfy their own curiosity and to improve their techniques of advocacy. Although these interests are not without first amendment significance,[4] they are not "paramount" like the public's right to receive information necessary for informed self-government.[5] The petitioners' access to information from jurors carries far less weight in the first amendment scale than a restriction on access to information that affects political behavior.

 Moreover, the petitioners voluntarily undertook to comply with the rules of any district court to which their action might properly be transferred when they filed their state-law diversity complaint in federal court. By voluntarily assuming the special status of trial participants and officers of the court, parties and their attorneys subject themselves to greater restraints on their communications than might constitutionally be applied to the general public.[6] As the Supreme Court has declared,

> The courts must take such steps by rule and regulation that will protect its processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. *Sheppard v. Maxwell,* 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620 (1967).

 The first-amendment interests of both the disgruntled litigant and its counsel in interviewing jurors in order to satisfy their curiosity and improve their advocacy are limited. We agree with the district court's implicit conclusion that those interests are not merely balanced but plainly outweighed by the jurors' interest in privacy and the public's interest in well-administered justice.

The denial of leave to interview jurors is therefore AFFIRMED.

4. *See* T. Emerson, The System of Freedom of Expression, 6–7 (1970).

5. *See Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 390, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371, 389 (1969); *CBS v. FCC,* 453 U.S. 367, 396, 101 S.Ct. 2813, 2829, 69 L.Ed.2d 706, 729 (1981); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 604, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248, 255 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 588, 100 S.Ct. 2814, 2833–34, 65 L.Ed.2d 973, 997 (1980) (Brennan, J., concurring); *Id.,* 448 U.S. at 575, 100 S.Ct. at 2826, 65 L.Ed.2d at 988 (plurality opinion).

6. *See Central South Carolina Chapter, Society of Professional Journalists,* 556 F.2d 706, 708 (4th Cir.1977) (adopting analysis of district court at 431 F.Supp. 1182 (D.S.C.)), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 771 (1978); T. Emerson, *supra* note 4, at 449–50, 463–65; Report to the Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue, 45 F.R.D. 391; Note, Protecting Child Rape Victims from the Public and Press After *Globe Newspaper* and *Cox Broadcasting,* 51 Geo.Wash. L.Rev. 269, 287 & n. 146 (1983).