**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 97-30756**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**VERSUS**

**CARL W. CLEVELAND, ET AL,**

**Defendants,**

**TIMES PICAYUNE PUBLISHING CORPORATION;**
**MICHAEL PERLSTEIN; CAPITAL CITY PRESS; JOE GYAN,**

**Intervenors-Appellants.**

Appeal from the United States District Court
for the Eastern District of Louisiana

October 29, 1997

Before GARWOOD, DUHÉ, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

The Times-Picayune Publishing Corporation (publisher of the *New Orleans Times-Picayune*), Capital City Press (publisher of the *Baton Rouge Advocate*), Michael Perlstein (a *Times-Picayune* reporter), and Joe Gyan (an *Advocate* reporter) (collectively, "the newspapers") complain that an order entered in the United States District Court for the Eastern District of Louisiana

unconstitutionally restricts their ability to pursue post-verdict interviews with jurors in a high-profile criminal trial. Finding no error, we affirm.

# I.

This appeal arises from a federal criminal trial of six defendants for racketeering and related offenses. The alleged crimes arose from attempts to influence legislation affecting the video poker industry in Louisiana. The defendants included two former Louisiana state senators, and the witnesses included an archbishop and a former governor. The trial attracted close attention from the Louisiana press. On June 27, 1997, after a six-week trial and eight days of jury deliberation, four defendants were convicted on some counts and acquitted on others; two defendants were acquitted of all charges.

After the jury rendered its verdict, United States District Judge Sarah S. Vance addressed the jury. During a monologue in which she thanked the jurors for their service, she issued the following order:

> I now instruct you that you have no obligation to speak to any person about this case. *I also instruct you that, absent a special order by me, no juror may be interviewed by anyone concerning the deliberations of the jury.* I also instruct you that the lawyers and the parties are not to attempt to question you without an order from me.

(Emphasis supplied.)

Eighteen days later, on July 15, 1997, the newspapers appeared before the court. They filed a motion to modify the above-

described order, contending that the italicized portion thereof violates their right to gather news and that it is unconstitutionally vague. On July 22, 1997, Judge Vance issued an opinion declining to modify her order.

On July 31, 1997, the newspapers filed an emergency motion with this Court for an expedited appeal from the decision of the district court. That motion was granted.

## II.

The newspapers claim that their First Amendment "right to gather news" has been compromised by Judge Vance's order and rely principally on *In re The Express-News Corp.*, 695 F.2d 807 (5th Cir. 1982). In *Express-News* this Court held that a "court rule cannot . . . restrict the journalistic right to gather news unless it is narrowly tailored to prevent a substantial threat to the administration of justice." *Express-News*, 695 F.2d at 810. The order entered by Judge Vance in this case is sufficiently narrow to satisfy the requirement of *Express-News*.

In *Express-News*, the district court had applied its local rule which provided "that no person shall 'interview . . . any juror, relative, friend or associate thereof . . . with respect to the deliberations or verdict of the jury in any action, except on leave of court granted upon good cause shown.'" *Id.* at 808 (omissions in original). In striking down the rule, this Court identified a number of factors which made it offensive:

> The rule is unlimited in time and in scope, applying equally to jurors willing and anxious to

> speak and to jurors desiring privacy, forbidding both courteous as well as uncivil communications, and foreclosing questions about a juror's general reactions as well as specific questions about other jurors' votes that might, under at least some circumstances, be inappropriate.

*Id.* at 810. *Express-News* also expressed concern that the order in that case "implicitly sanction[ed] juror[s'] conversations with their relatives, friends, and associates." *Id*. The order entered by Judge Vance shares very little with the unconstitutional order entered in *Express-News*.

First, although unlimited in time, the scope of Judge Vance's order is more limited than that in *Express-News*. It applies only to interviews with the jurors themselves and not those with jurors' relatives, friends, or associates. Also, it applies only to "deliberations of the jury" and not to the verdict itself. The fact that the order was unlimited in time is not, in itself, dispositive, as we approved the use of restrictions without time limitations in *United States v. Harrelson*, 713 F.2d 1114 (5th Cir. 1983), *cert. denied*, 465 U.S. 1041 (1984).

Furthermore, though Judge Vance's order "appl[ies] equally to jurors willing and anxious to speak and to jurors desiring privacy, forbidding both courteous as well as uncivil communications," the presence of these factors is not dispositive of our inquiry. *Express-News* suggests that in some cases instructions meeting this description will be unconstitutional because they are broader than necessary to justify the restriction of newsgathering rights in light of some other countervailing consideration. However, the present case is distinguishable from the run-of-the-mill criminal

-4-

trial in this regard because there was a great amount of media coverage of the trial from start to finish. *See, e.g.*, **Harrelson**, 713 F.2d at 1117; **United States v. Antar**, 38 F.3d 1348, 1364 (3d Cir. 1994). This factor justifies the imposition of the order entered in this case without regard to the willingness of the jurors to be interviewed or the civility of the reporters seeking to conduct interviews.

The order entered by Judge Vance does not foreclose "questions about a juror's general reactions," as did the order in **Express-News**. The newspapers have argued that the use of the term "deliberations" is imprecise and might be construed by jurors wishing to speak as extending to their individual reactions to the trial proceedings occurring in open court. We disagree. The restriction of post-verdict interviews concerning "jury deliberation" was expressly endorsed by this Court in **Harrelson**. *See* **Harrelson**, 713 F.2d at 1118. As contemplated by **Harrelson** and as used in Judge Vance's order, "deliberations" refers only to the discussions about the case occurring among jurors within the sanctity of the jury room. A juror in this case may be interviewed about his own "general reactions" to the trial proceedings, and he is only prevented from being interviewed about the private debates and discussions which took place in the jury room during the time leading up to the jury's rendering of its verdict.

The order entered by Judge Vance does not purport to prevent jurors from speaking out on their own initiative. It thus does not raise the concern expressed in **Express-News** that an order limiting

-5-

post-verdict interviews might implicitly sanction jurors' conversations with their relatives, friends, and associates. A juror who wishes to do so may make a statement.

Finally, Judge Vance's order does not require "good cause shown," as did the order in *Express-News*. As the opinion in *Express-News* notes, a court may not impose a restriction on post-verdict interviews and then condition the restriction by requiring "those who would speak freely to justify special treatment by carrying the burden of showing good cause." *Express-News*, 695 F.2d at 810. The order imposed by Judge Vance does not purport to shift to the media "the burden of demonstrating the need for curtailment," *id.*, and is in this respect distinguishable from the order stricken in *Express-News*.

Our Court's decision in *Express-News* articulated a strict standard for the restriction of post-verdict interviews of jurors in criminal cases. However, the application of that rule must be tempered, as it was in *Harrelson*, by the recognition that "members of the press, in common with all others, are free to report whatever takes place in open court but enjoy no special, First Amendment right of access to matters not available to the public at large. *The particulars of jury deliberation fall in the latter class . . . ." *Harrelson*, 713 F.2d at 1118 (emphasis supplied). We noted in *Harrelson*, and we reiterate here, the Supreme Court's admonition that "[f]reedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the

world." *Clark v. United States*, 289 U.S. 1, 13 (1933) (Cardozo, J.).

Judge Vance's order was an appropriate measure taken to address the danger, identified in *Clark*, that compromises of the secrecy of jury deliberations presents to our criminal justice system's reliance on jury determinations. Thus, following our Court's precedents, we find that the order entered by Judge Vance was narrowly tailored to prevent a substantial threat to the administration of justice -- namely, the threat presented to freedom of speech within the jury room by the possibility of post-verdict interviews.

## III.

The newspapers contend that the district court's order is unconstitutionally vague. As mentioned above, they maintain that the reference to "deliberations" is unclear, failing to give adequate notice to jurors, the press, and the public. However, as noted above, we disagree with this characterization of the order.

The newspapers contend that the reference to jury "deliberations" is vague because it prompts speculation as to whether it contemplates "an individual juror's particular 'deliberations' (as distinguished from the 'jury' as a whole)" or "generalized descriptions of the jury's 'deliberations' (as opposed to descriptions of the specific positions taken by other particular jurors)" or "virtually all aspects of the jurors' service as jurors (for example, an individual juror's thoughts, impressions and

feelings ('deliberations') formed while listening to evidence presented during the trial)." Though these semantical gymnastics presented in the newspapers' brief are impressive, they are distinctions that only a lawyer would appreciate.

The term "deliberations of the jury" may not be a paragon of definiteness and precise meaning. Few terms in our language are. The term does, however, bring an immediate image to mind: the members of a jury in the jury room discussing and debating the evidence, the testimony, and the instructions from the court in order to reach a verdict. We hold that the term "jury deliberations" is sufficiently definite to convey the idea the district court intended and does not realistically threaten First Amendment protected communication. That is all that the law requires. *See* **Kolender v. Lawson***,* 461 U.S. 352, 357 (1983) (void-for-vagueness doctrine requires definition "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement").

## IV.

For the aforementioned reasons, the validity of the district court's order restricting post-verdict juror interviews is **AFFIRMED.**