Opinion issued October 30, 2007.
 
 
 
 
 
 
 



     
 
 
 
 
 
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00866-CV
 

 
 
IN RE HEARST NEWSPAPERS PARTNERSHIP, L.P. AND GALVESTON
COUNTY DAILY NEWS, Relators
 

 
 
Original Proceeding on Petition for Writ of Mandamus
 

 
 
O P I N I O N
 
           By petition for writ of mandamus, relators, Hearst Newspapers Partnership, L.P.
(“Hearst News”) and Galveston County Daily News, challenge the trial court’s


 order
prohibiting discharged jurors from speaking to the press, media, or others about the
evidence and what their votes would have been after the trial ended in a settlement. The
relators contend the order is an unconstitutional prior restraint on their right to gather
news under both the Texas Constitution and the First Amendment. We conditionally
grant the petition for writ of mandamus.
Background
 
           After an explosion at BP’s Texas City plant in March 2005, about 4,000
individuals filed cases against BP and others.


 The explosion and the cases received
much publicity on the local and national levels. Among other things, this publicity
included news reports, television interviews, mailings sent to local residents, town hall
meetings with BP employees, and Chamber of Commerce meetings.
           In August 2007, a group of plaintiffs was called to trial. Due to the pretrial
publicity, the trial court called over 1200 people to report to jury duty to ensure that a
jury and several alternates could be empaneled. This jury heard ten days’ evidence from
the plaintiffs before the trial court announced that the parties had reached a settlement. 
After the trial ended, the trial court permitted the lawyers for each side to meet with the
jurors, who had some positive things to tell each side’s lawyers. However, with
approximately 1200 cases still pending, the trial court was concerned about additional
pretrial publicity interfering with the parties’ rights to a fair trial by making the task of
selecting future juries even more difficult, particularly because the jurors had not heard
all the evidence. Therefore, the trial court admonished the jurors, “I am going to forbid
you from speaking to anybody in the media or anybody other than myself or the lawyers
or their employees until after all cases have settled.” 
           Two days later, Hearst News, on behalf of the Houston Chronicle, intervened,
requesting the trial court to reconsider and rescind the gag order on the jurors. Soon
thereafter, the Galveston County Daily News also intervened. Hearst News argued that
the order was an unconstitutional prior restraint under both article I, section 8 of the
Texas Constitution and the First Amendment. The trial court promptly held a hearing,
affording all parties and the newspapers an opportunity to be heard. No evidence was
adduced at this hearing. However, the trial court described the unusual nature of the
litigation, including the large number of parties and the extensive pretrial publicity. 
 
In addition to the newspaper media, we have had to deal with the web site
issue, the internet issue, mailing things to jurors, word on the street, talks
being given at Chamber of Commerce. We have had hours and hours of
hearings about how much is out there . . . [We] have talked to hundreds and
hundreds and hundreds of jurors in these past two voir dire panels to try to
find out how many people were affected by the publicity. The first time we
called in a panel we called in I think 12 or 13 hundred to get the 12, and the
second time we realized that. . . . 
It costs a tremendous amount of money to the taxpayer to bring in the kind
of panel you have to get down to just twelve impartial people in this case.
 
The trial court declined to rescind the gag order, but instead signed a written order
limiting the time period of the restriction on the jurors’ speech.
           In the order, the trial court found that (1) no final judgment or nonsuit was reached
in the subject trial and that numerous other claims in the consolidated litigation remained
outstanding; (2) media coverage of the discharged jurors’ impressions about the
evidence, trial, or disclosure of what their votes would have been, based upon the
incomplete trial record, posed a threat to the administration of justice in the remaining,
pending cases; and (3) the temporary restriction on discharged jurors’ speech was the
least restrictive means available to prevent the potential harm. The trial court, therefore,
ordered that “discharged jurors are under an instruction not to speak or disclose to the
press, media, or others about their views of the evidence and/or their impressions of what
their vote would have been if the evidence had concluded on the day that the jurors were
discharged until on or after January 2, 2008 unless such order is extended upon motion
of any party for good cause shown.”
Standard of Review
           Mandamus relief is available only to correct a “clear abuse of discretion” when
there is no adequate remedy by appeal. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding). “A trial court clearly abuses its discretion if ‘it reaches a
decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of
law.’” Id. at 839 (citing Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.
1985) (orig. proceeding)). Mandamus may be used to challenge a prior restraint on the
media. Star-Telegram, Inc. v. Walker, 834 S.W.2d 54, 55 (Tex. 1992).
Prior Restraints
           The Texas Constitution affirmatively grants the rights to freedom of speech and
of the press: “Every person shall be at liberty to speak, write or publish his opinions on
any subject, being responsible for the abuse of that privilege . . . .” Tex. Const. art. I,
§8. In Texas, pre-speech sanctions or “prior restraints” are presumptively
unconstitutional.


 Davenport v. Garcia, 834 S.W.2d 4, 9 (Tex. 1992). A prior restraint
in a civil case “will withstand constitutional scrutiny only where there are specific
findings supported by evidence that (1) an imminent and irreparable harm to the judicial
process will deprive litigants of a just resolution of their dispute, and (2) the judicial
action represents the least restrictive means to prevent that harm.” Id. at 10.
           In Davenport, the supreme court struck down the trial court’s gag order
prohibiting the parties, attorneys, and witnesses from discussing the case except as
necessary with each other or in court. Id. at 6. The supreme court noted that, “a prior
restraint will withstand scrutiny under this test only under the most extraordinary
circumstances.” Id. at 10. The supreme court explained that (1) the harm must be to the
judicial process, (2) the harm must be imminent and severe, and (3) there must be no
alternative available to address the threat to the judicial process that is less restrictive of
state speech rights. Id. at 10–11. In addition, the supreme court observed that
convenience will never justify the imposition of a gag order. Id. at 11 (citing Ex parte
McCormick, 129 Tex. Crim. 457, 462, 88 S.W.2d 104, 107 (1935)).
The Right to Gather News
           The First Amendment provides, “Congress shall make no law . . . abridging the
freedom of speech, or of the press . . . .” U. S. Const. amend. I. Similarly, article I,
section 8, provides that “no law shall ever be passed curtailing the liberty of speech or
of the press.” Tex. Const. art. I, § 8. The parties have not argued that the right to gather
news under the Texas constitution is broader than that afforded by the United States
constitution. In fact, at oral argument they directed our attention to federal precedent. 
In light of the nearly identical language in the two charters, we find that the right to
gather news under the Texas constitution is coextensive with that right under the United
States constitution. See Operation Rescue-Nat’l v. Planned Parenthood of Houston and
Se. Tex., Inc., 975 S.W.2d 546, 559 (Tex. 1998) (“It is possible that Article I, Section 8
may be more protective of speech in some instances than the First Amendment, but if it
is, it must be because of the text, history, and purpose of the provision, not just simply
because.”). 
           As a Texas appellate court construing the constitutionality of a Texas district court
order restricting the rights of Texas citizens, we apply Texas law, i.e., Davenport. 
However, we also look to well-reasoned and persuasive federal authority to inform our
analysis of the relator’s right to gather news. Davenport, 834 S.W.2d at 20 (“With a
strongly independent state judiciary, Texas should borrow from well-reasoned and
persuasive federal procedural and substantive precedent when this is deemed helpful, but
should never feel compelled to parrot the federal judiciary.”)
           News organizations may receive, investigate, and report on public trial
proceedings, but they generally have no right to information not available to the public
generally. In re Express-News Corp., 695 F.2d 807, 809 (5th Cir. 1982). In Express-News, the Fifth Circuit held a local federal district court rule prohibiting any person from
interviewing any juror concerning the deliberations or verdict of the jury, except by leave
of court, to be unconstitutional as applied to the interviews sought. Id. at 808. In
particular, the court of appeals held that the rule violated the newspaper’s constitutional
right to gather news. Id. The court of appeals noted the relationship between freedom
of the press and the right to gather news:
The first amendment’s broad shield for freedom of speech and of the press
is not limited to the right to talk and to print. The value of these rights
would be circumscribed were those who wish to disseminate information
denied access to it, for freedom to speak is of little value if there is nothing
to say. Therefore, the Supreme Court recognized in Branzburg v. Hayes,
408 U.S. 665, 681, 92 S. Ct. 2646, 2656, 33 L.Ed.2d 626, 639 (1972), that
news-gathering is entitled to first amendment protection, for “without some
protection for seeking out the news, freedom of the press could be
eviscerated.”
 
Id. at 808–11. The court also noted the relationship between the right to gather
news and the public’s right to receive the news:
Government-imposed secrecy denies the free flow of information and ideas
not only to the press but also to the public. The public right to receive
information has been repeatedly recognized and applied to a vast variety
of information.
 
The judiciary, like the legislative and judicial branches, is an agency of
democratic government. The public has no less a right under the first
amendment to receive information about the operation of the nation’s
courts than it has to know how other governmental agencies work and to
receive other ideas and information.
 
Id. at 809 (footnote omitted). Finally, the court of appeals observed that the right to
gather news is not absolute, and may sometimes be outweighed by competing interests,
like a criminal defendant’s Sixth Amendment right to a fair trial, or a discharged juror’s
right to privacy and protection against harassment. Id. at 809–10. But even in these
instances, a court rule cannot restrict the journalistic right to gather news unless it is
narrowly tailored to prevent a substantial threat to the administration of justice. Id. at
810. In addition, the court of appeals stated that discharged jurors are under no
obligation to speak. Id. at 811 (“The jurors’ freedom of speech is also freedom not to
speak, and the district court may so instruct the jurors in order to avoid the possible
misunderstanding that jury service places them under some obligation to subject
themselves to scrutiny or to submit to interview.”).Restrictions on Discharged Jurors’ Speech
           Restrictions on juror speech have rarely been found to be constitutionally
permissible; the restrictions have been limited to situations, such as protecting the
secrecy of juror deliberations, protecting the privacy of jurors, and preserving a
defendant’s sixth amendment right to a fair trial in criminal cases. See U. S. v.
Cleveland, 128 F.3d 267, 267–71 (5th Cir. 1997) (upholding restriction on juror
interviews to protect secrecy of jury deliberations); U.S. v. Harrelson, 713 F.2d 1114,
1116–18 (5th Cir. 1983) (same); Haeberle v. Tex. Int’l Airlines, 739 F.2d 1019, 1020–22
(5th Cir. 1984) (upholding restriction on juror interviews to protect juror privacy when
interviews sought by litigant’s attorney); U.S. v. Williams, No. H-03-0221-11, 2006 WL
3099631 at *4 (S.D. Tex. October 30, 2006) (slip copy) (upholding restriction on juror
interviews to protect secrecy of jury deliberations); State v. Neulander, 801 A.2d 255,
271–75 (N.J. 2002) (upholding restriction on juror interviews after mistrial in capital
murder case to prevent the State from gaining unfair advantage on retrial). 
           We conclude that the right to gather news generally includes the right of the press
to interview willing, discharged jurors, except when outweighed by a compelling
government interest, such as the need to protect the sanctity of jury deliberations, a
juror’s right to privacy and to be free from harassment, or a defendant’s Sixth
Amendment right to a fair trial. Cleveland, 128 F.3d at 267–71; Haeberle, 739 F.2d at
1020–22; Harrelson, 713 F.2d at 1116–18; In re Express-News Corp., 695 F.2d at
808–11; Neulander, 801 A.2d at 271–75.Difficulty Empaneling a Jury
           The trial court restricted the discharged jurors’ right to speak to “the press, media,
or others,” because it concluded that the additional, incremental publicity would cause
imminent and irreparable harm to the judicial process by making it even more difficult
to empanel a jury. But no findings or evidence show that the additional, incremental
publicity from juror interviews would cause imminent and irreparable harm to the
judicial process. Davenport, 834 S.W.2d at 10. To satisfy the second prong of
Davenport, the prior restraint must be the least restrictive means possible to prevent the
threatened imminent and irreparable harm to the judicial process. Id. Other than voir
dire, nothing in the record shows that the trial court considered other less restrictive
means, such as continuance or change of venue. Further, the trial court’s conclusion that
voir dire would be inconvenient does not satisfy the Davenport standard. Id. at 11.
           Pretrial publicity does not necessarily create such harm to the judicial process as
to outweigh the media’s right to gather news. See Neb. Press Ass’n v. Stuart, 427 U.S.
539, 554–55, 96 S. Ct. 2791, 2800–01 (1976) (“[P]retrial publicity even pervasive,
adverse publicity does not inevitably lead to an unfair trial.”); see also Neulander, 801
A.2d at 272 (“In our view, the inhibiting effect of media interviews of the first jury on
the ‘free exchange of ideas’ by members of the retrial jury simply is too speculative a
basis on which to justify restricting the media’s right of access to consenting jurors. We
also are inclined to doubt that such juror interviews would ‘restrict the jury pool’ on
retrial.”); see also Ex parte McCormick, 88 S.W.2d at 105–07.
           The record does not show that interviews of the discharged jurors would preclude
the selection of an impartial jury or that measures less restrictive than a gag order would
be ineffective. See Davenport, 834 S.W.2d at 10. Other than the claimed difficulty in
selecting a jury, there are no other claimed harms that may result from allowing the
jurors to talk. The Sixth Amendment is inapplicable because this is a civil case. U.S.
Const. amend. VI (“In all criminal prosecutions, the accused shall enjoy the right to a
speedy and public trial, by an impartial jury . . . .”) (Emphasis added).


 The trial court
was not concerned about the media harassing the jurors. There exists no concern about
protecting the secrecy of juror deliberations because the trial ended before the conclusion
of the plaintiffs’ case, without any jury deliberations. We conclude that the gag order in
this case is unconstitutional under article I, section 8 of the Texas Constitution.
Conclusion
           We conditionally grant the writ of mandamus and direct the trial court to vacate
the September 18, 2007 and September 24, 2007 orders prohibiting the jurors from
speaking to the press and others. We are confident the trial court will promptly comply
and our writ will issue only if it does not.
 
 
                                                                  Elsa Alcala
                                                                  Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Higley.