CAPE PUBLICATIONS, INC., d/b/a
The Courier–Journal,
Appellant,

v.

The Honorable Paul BRADEN Judge,
Whitley Circuit Court; the Common-
wealth of Kentucky (Real Party in
Interest); and Larry Osborne (Real
Party in Interest), Appellees,

and

The Honorable Paul Braden
Judge, Whitley Circuit
Court, Appellant,

v.

Cape Publications, Inc., d/b/a the Couri-
er–Journal; and Commonwealth of
Kentucky (Real Party in Interest) and
Larry Osborne, Appellees,

and

Larry Osborne, Gail Robinson
and Timothy G. Arnold,
Appellants,

v.

Honorable Paul E. Braden, Judge Whit-
ley Circuit Court; and Common-
wealth of Kentucky (Real Party in
Interest), Appellees.

Nos. 2000–SC–0769–MR, 2000–SC–
0814–MR, 2000–SC–0875–TG.

Supreme Court of Kentucky.

March 22, 2001.

Jon L. Fleischaker, R. Kenyon Meyer, Dinsmore & Shohl, LLP, Louisville, Counsel for Cape Publications d/b/a The Courier Journal.

Howard O. Mann, Marcus L. Vanover, Law Offices of Howard O. Mann, P.S.C., Paul Braden, Judge, Whitley Circuit

Court, Corbin, Counsel for Judge Paul Braden.

A.B. Chandler III, Attorney General, Frankfort, Allen C. Trimble, Trimble & Mann, Corbin, Counsel for Commonwealth of Kentucky.

Dennis Burke, Roger A. Gibbs, Department of Public Advocacy, James M. Norris, Assistant Public Advocate, London, Timothy G. Arnold and Gail Robinson, Assistant Public Advocates, Department of Public Advocacy, Frankfort, Counsel for Larry Osborne, Gail Robinson and Timothy G. Arnold.

WINTERSHEIMER, Justice.

This appeal and cross-appeal are from an order of the Court of Appeals which grants in part a writ of mandamus pursuant to CR 76.36. The order of the circuit court denying a request by the Courier Journal to remove restrictions of access to jurors was vacated and the circuit court was directed to take appropriate steps to have a letter sent to each juror to make an affirmative request to continue to refuse to be interviewed by the news media.

The question presented by the newspaper is whether the post-trial order is an unconstitutional prior restraint on the First Amendment right to speak with jurors and to gather news related to a trial after the trial is completed.

Larry Osborne and counsel petitioned the Court of Appeals for mandamus relief which parallels the relief sought by the newspaper. His petition has been transferred to this Court and is considered herein.

On cross-appeal and in response, Judge Braden frames the issues as follows: 1) The jury order was validly issued and is not an unconstitutional prior restraint. 2) The jury order is not overbroad. 3) An evidentiary hearing was offered and declined. 4) The granting of a partial mandamus was inappropriate. 5) The trial court acted properly in balancing competing constitutional issues, and 6) The trial

court has the authority to control access to jurors.

Originally, the trial judge had ordered no communication with any juror during the capital murder trial of Larry Osborne which resulted in a conviction and is now pending on appeal before this Court. At the conclusion of the trial in December of 1998, the circuit judge, after offering counseling should any juror desire such services, entered an order continuing an order previously entered which prohibited any person from contacting, communicating or interviewing any juror involved in the trial except as permitted by the court. The judge advised the jurors that when they were ready to leave the jury room, there were people who would escort them when they went outside. The judge also stated:

> You are excused from court and you may or may not, as you desire, go into the jury room, but I would like for you to pick up copies of those orders in case anyone attempts to talk with you about this. You feel free to discuss whatever you want to do on your own, but this is just to prevent anyone that you don't want to talk with from talking with you.

The order preventing access to the jury was entered without objection by any party to the case at that time, including the defendant. It provides, "That no person shall contact, communicate or interview any juror involved in this trial, except as permitted by this Court."

Approximately 14 months later, the newspaper attempted to interview a juror who refused and referred to the circuit court order. The newspaper intervened in circuit court and requested an evidentiary hearing but stated that it would not call any witnesses. The type of evidentiary hearing requested by the newspaper required that the prosecution give evidence of a compelling government issue in restricting First Amendment rights prior to doing so. The essence of the newspaper's request was that the prosecution present

the jurors as witnesses to support the no contact order subsequent to trial.

The circuit judge considered the motion at motion hour on May 8, 2000 and ultimately entered an order observing that the case in question had a high impact on the community and that the jurors "have a certain fear for their personal safety and for their mental stability...." The Osborne trial had been the first capital murder trial in the county in 50 years. The circuit court relied on *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), for the proposition that the individual right of privacy should be balanced with the First Amendment right of access. The circuit court also found that it had offered an alternative to the newspaper that had been declined and denied the motion to lift the restriction previously ordered.

The newspaper sought a writ of mandamus from the Court of Appeals. The Court of Appeals granted the mandamus in part and vacated the circuit court order which had refused to lift the restriction on access to the jurors. It further ordered the trial judge to determine by means of a letter sent to each juror whether or not the juror continues to refuse to be interviewed by the news media. This appeal and a cross-appeal followed.

## I. Prior Restraint

■ We must observe that the right to gather news is clearly entitled to First Amendment protection, otherwise freedom of the press would be severely compromised. *See Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). However such right is not absolute and is limited by the condition that a prior restraint on news gathering must be "necessitated by a compelling governmental interest" and must be "narrowly tailored to serve that interest." *In re Express–News Corp.*, 695 F.2d 807 (5th Cir.1982), held that a local rule prohibiting post-trial interviews with jurors, except by leave of court, was unconstitutional. However, *In*

*re Express–News Corp., supra*, further observed that even after completing jury duties, jurors are entitled to privacy and protection against harassment. The right to interview jurors is not absolute and is separated by a delicate but important line between the permissible and the impermissible. *United States of America v. Antar*, 38 F.3d 1348 (3rd Cir.1994). Kentucky has recognized that access of the press must be balanced with the right of privacy and that the trial judge is the appropriate person to make such decisions which should be upheld in the absence of a showing of an abuse of discretion. *Courier Journal v. Peers*, Ky., 747 S.W.2d 125 (1988).

We must distinguish between contact with jurors by the news media and contact by parties or attorneys who took part in the trial or are involved in the appeal. The media has less incentive to upset a verdict than does a losing party or attorney. *See Journal Publishing Co. v. The Honorable E.L. Mechem*, 801 F.2d 1233 (10th Cir.1986). Testimony by a juror about deliberations is not competent evidence. RCr 10.04; *See McQueen v. Commonwealth*, Ky., 721 S.W.2d 694 (1986); *Gall v. Commonwealth*, Ky., 702 S.W.2d 37 (1985). We are not persuaded by the arguments or citations to authority presented by Osborne and his counsel in regard to the right to interview jurors. Osborne has a right to have his arguments considered here as a real party in interest.

■ Even after completing their service, jurors are entitled to privacy and to protection against harassment. We note with approval *United States v. Harrelson*, 713 F.2d 1114 (5th Cir.1983), which indicates that it can be the responsibility of the trial judge to review any requests by anyone made after a known refusal to be interviewed is demonstrated depending on the specific circumstances. Repeated requests were considered to be too many.

## II. Overbroad/Procedure

■ The December 1998 post-trial order was overbroad. It is well established that during trial, the circuit judge must admonish jurors not to have any communication with each other, or anyone else, about a felony case, and to report any attempted communications to the trial judge. RCr 9.70; KRS 29A.310(1). Traditionally, this Court has a strong preference for filtering all communications through a court officer so as to obtain leave of court. *See Arnett v. Commonwealth*, Ky., 470 S.W.2d 834 (1971). In this situation, we are faced with a post-trial order which attempts to protect jurors and their privacy from unnecessary invasion.

■ We agree with the United States Court of Appeals for the Tenth Circuit in *Journal Publishing Company v. Mechem, supra*, when it noted that trial courts have wide discretion in being able to protect the judicial process from influences that pose a danger to effective justice. Although the threat to justice caused by news media contact with jurors is much different after trial than it is during trial, *see Sherman, supra*, at 1361, the courts have properly exercised their right to protect jurors from post-trial harassment. *See United States v. Harrelson, supra.*

■ As guidance to trial judges who may face similar problems, we would state that a party or an intervenor is entitled to procedural due process when the court seeks to restrict anyone from exercising a constitutionally protected news interest including news gathering. The minimum requirements of due process are notice and an opportunity for a hearing appropriate to the nature of the case. *United States v. Raffoul*, 826 F.2d 218 (3rd Cir.1987). In addition, a particularized finding of fact must be made for the record. *Antar, supra*. The burden of establishing a compelling government interest is on the government.

■ The findings must demonstrate a clear and present danger to the privacy of the jurors. *United States v. Sherman*, 581 F.2d 1358 (9th Cir.1978). The Court must articulate findings of the actual expectation of the probability of harassment of jurors. There must be proof of a threat of harassment to support such order. Irritation and annoyance are not sufficient.

The conduct of any evidentiary hearing is best left to the sound discretion of the circuit judge and can be undertaken in such a way as to provide for the privacy interests of the jurors as well as determining the compelling government interest needed.

It is abundantly clear that if a juror does not wish to communicate with another individual, such juror is not required to do so. *See United States v. Sherman*, at 1362. The desire not to communicate is best achieved by simply refusing to talk. Seeking the protection of a court for a prior restraint is far more serious and much more difficult because it can involve an unconstitutional state action so as to create a prior restraint.

## III. Post Conviction Order

■ Once the trial is completed and the completion involves any role that the jury might assume in regard to post-conviction motions, the circuit court loses authority to restrict any access by or with jurors of any sort. Clearly the post-conviction remedy at the trial level would expire upon the filing of a notice of appeal, which is automatic in death cases. Consequently, the Court of Appeals was correct in vacating the order of the circuit court because the trial was complete. An appeal was pending and the circuit court lacked authority to control the conduct of jurors or any other individual, including the public or press, in regard to contact. We find it unnecessary to address any of the arguments presented either on appeal or cross-appeal in regard to the post-conviction order. We make no attempt to indicate all conditions of no contact which a court may

or may not impose. However, the authority of the court to impose prior restrictions on First Amendment rights is limited; such restraint must be exercised in response to specific and compelling reasons and tailored to particular needs.

Naturally, nothing in this opinion prevents the circuit court from advising jurors by letter that they are fully released from the protection thought to be afforded by the post-conviction order. Obviously, the court could advise the former jurors that they had no obligation to talk to anyone and that they could simply refuse to speak. Nothing in this opinion should be considered as requiring jurors to speak to the media or anyone else. A juror may speak or remain silent as he or she wishes.

There is nothing to prevent former jurors from reporting actual harassment or intimidation to police authorities for appropriate protection or other remedy as may be required. A former juror can also pursue a private civil remedy if actual harassment or intimidation arises.

### IV.  Mandamus Remedy

■ A writ of mandamus is an extraordinary remedy which should be reserved for those situations in which a prior court is acting without or beyond its jurisdiction, outside its statutory authority or within its jurisdiction, but erroneously. *Bender v. Eaton*, Ky., 343 S.W.2d 799 (1961). Here, once the jury was dismissed, the circuit court lost jurisdiction. As a practical judicial matter, the post conviction order did propel the case into the Court of Appeals which vacated the circuit court order with directions. Under the circumstances, the Court of Appeals was correct in vacating the order of the circuit court because the circuit court was exceeding its authority under all the circumstances. We must reverse that part of the Court of Appeals opinion which directs the circuit court to send a letter to each juror.

■ Members of the press, in common with the public in general, are free to report whatever takes place in open court, but enjoy no special first amendment right of access to matters which are not available to the public at large. Jury deliberations is one of those matters that fall into the reserved class. Once the jury is dismissed, the determination to speak or not to speak is solely on the individual juror.

Jury deliberations have a high place in the hierarchy of the rights protected by the right to privacy. The legitimate protection of jury discussions from actual and demonstrated harassment is a paramount concern for the judicial system at all levels. Jurors should feel secure so that their arguments and votes can be free and independent.

The decision of the Court of Appeals is affirmed in part and reversed in part.

All concur.