Timothy M. **PANGALLO**, Appellant,

v.

**KENTUCKY LAW ENFORCEMENT COUNCIL; Kentucky Justice Cabinet, Appellees.**

**No. 2001–CA–002765–MR.**

Court of Appeals of Kentucky.

May 16, 2003.

Mott V. Plummer, Newport, KY, for appellant.

Stephen D. Lynn, Associate General Counsel, Department of Criminal Justice, Richmond, KY, for appellee.

Before COMBS and DYCHE, Judges; and POTTER, Special Judge.[1]

1. Senior Status Judge John Woods Potter sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution.

*OPINION*

JOHN WOODS POTTER, Special Judge (Assigned).

Timothy M. Pangallo appeals from an order of the Campbell Circuit Court dismissing his appeal from a decision of the Kentucky Law Enforcement Council (KLEC) to revoke his certification as a police officer for allegedly making false statements to his employer, the Newport Police Department (NPD), regarding the status of his Marine Corps Reserves obligations and discharge. Because Pangallo was denied minimal due process safeguards under the procedures which resulted in the revocation of his police officer certification, we reverse the decision of the Circuit Court and remand for the entry of an order requiring KLEC to reinstate Pangallo's certification to inactive status.

On December 3, 1999, Pangallo graduated from the Kentucky Law Enforcement Basic Training in Richmond, Kentucky. On March 10, 2000, he received his peace officer certification from KLEC. Pangallo was subsequently employed by NPD. At the time of his hiring, Pangallo was a member of the United States Marine Corps Reserves.

On May 8, 2000, Pangallo received a discharge under other than honorable conditions from the Marine Corps Reserves. On August 24, 2000, after Pangallo reported for his shift at NPD, he was approached by two of his superior officers, who presented Pangallo with resignation papers. Though Pangallo signed the resignation papers, he now claims that he was coerced into resigning and signed the papers under duress. Within 10 days of Pangallo's resignation from the force, the NPD notified KLEC pursuant to KRS 15.392(1), and Pangallo's police officer certification was placed in inactive status.

On October 2, 2000, the NPD Operations Commander mailed a letter to KLEC requesting that Pangallo's police officer certification be revoked. The letter stated that Pangallo had made false statements to NPD officials regarding his Marine Corps Reserves obligation and discharge. As a result of the letter, on November 15, 2000, KLEC issued a letter revoking Pangallo's police officer certification.[2]

On November 27, 2000, Pangallo filed an appeal of the certification revocation with the Campbell Circuit Court. *See* KRS 15.390(2). In the appeal, Pangallo contended that he had never made misrepresentations to NPD officials, and that the action of KLEC in revoking his police officer's certification was arbitrary, capricious and an abuse of due process in that he was not afforded the opportunity to rebut the allegations of NPD's October 2, 2000, letter to KLEC. On February 20, 2001, Pangallo filed a motion to declare KRS 15.392(4) and KRS 15.392(5)[3] unconstitutional as written and/or as applied against appellant.

On May 29, 2001, Pangallo filed a motion for summary judgment. On September 27, 2001, the trial court entered an order denying Pangallo's motion for summary judgment, determining that KRS 15.392(4) and KRS 15.392(5) are constitutional as

**2.** We have been unable to reconcile these specific procedures with the statutes applicable to KLEC, *see* KRS 15.310—KRS 15.333, or to Officer Certification and Training, *see* KRS 15.380—KRS 15.404.

**3.** Effective July 15, 2002, KRS Chapter 15 was amended. As amended subsections (4)

and (5) of KRS 15.392 are renumbered as subsections (5) and (6), respectively. In order to maintain consistency with the circuit court record and appellate briefs, our citations to KRS Chapter 15 refer to the pre-July 2002 version. The 2002 amendments to Chapter 15 do not affect our decision in this case.

written and as applied to the appellant, and holding that KLEC acted properly when it revoked Pangallo's police officer certification. This appeal followed.

■ Pangallo contends that his right to due process was not observed in the course of KLEC's revocation of his police officer's certification.

■ In reviewing an appeal from an administrative decision, our judicial review is concerned with the question of arbitrariness. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* Ky., 379 S.W.2d 450, 456 (1964). The scope of this review falls into three fundamental grounds: (1) whether the agency acted in excess of its granted powers; (2) whether the party to be affected received procedural due process; and (3) whether there was substantial evidentiary support for the action of the agency. *Id.* The primary allegation of arbitrariness in this case is that Pangallo did not receive procedural due process under the procedure whereby KLEC revoked his police officer certification. The minimum requirements of due process are notice, an opportunity for a hearing appropriate to the nature of the case, and the making of particularized findings of fact for the record. *Cape Publications, Inc. v. Braden,* Ky. 39 S.W.3d 823, 827 (2001).

■ The appellees agree with Pangallo's argument that a police officer is entitled to due process before his certification status can be revoked by KLEC. The appellees, however, contend that Pangallo waived his right to challenge the revocation of his certificate when he voluntarily resigned from the NPD police force. While we agree that by resigning from the force Pangallo waived his rights to the due process procedures applicable to the termination of a police officer, for the reasons stated below, we do not agree that he further waived his due process rights to challenge the verity of NPD's conclusion that he engaged in willful falsification of information to obtain or maintain certified status.

KLEC, among other things, certifies applicants who have met its requirements to be a law enforcement officer. KRS 15.330(e). Certification is a prerequisite for permanent employment in many law enforcement jobs. KRS 15.380.

The statutory scheme for becoming certified and remaining certified is somewhat peculiar. The scheme apparently was designed to limit KLEC's ability to second-guess an officer's employer's assessment of his suitability for law enforcement work. KRS 15.386 sets forth five certification categories: precertification, certified, inactive, revoked, denied. In addition, upon the death of a certified officer, his certification is retired. KRS 15.392(3).

A somewhat simplified description of the certification categories is as follows: An individual who is employed by a law enforcement agency and meets certain minimum qualifications, but has not completed his training, has precertification status and is given a year to complete his training. KRS 15.386(1). A person who is employed in law enforcement and meets all the requirements is certified. KRS 15.386(2). A person's certification becomes inactive upon his separation from his employment. KRS 15.386(3). If a person with an inactive certification later obtains employment in law enforcement, he will again become certified if he updates his training and has not committed certain acts for which his certified status may be revoked. *Id.* A person whose employment is terminated for certain specified reasons, including willful falsification of information to obtain or maintain certified status, is subject to having his certification revoked. KRS 15.386(4).

KRS 15.392(1) provides that within 10 days after an employee leaves his employment, the employer must file a summary with the KLEC providing relevant information about the separation. KRS 15.392(4) provides that the "employing agency's findings of fact and evidentiary conclusions shall be deemed final. [KLEC] shall be limited only to revoking the certification." KRS 15.392(5) provides that the "[KLEC] shall not accept or hear complaints."

Thus while KLEC initially certifies officers, the employer plays the dominant role concerning whether an officer maintains that certification. The employer makes the decision about whether to fire an individual, and its basis for the termination determines whether the KLEC places the employee on inactive or revoked status. Clearly the statutory scheme envisions that the employee will obtain his due process through the employment termination process.

The above scheme does not fully envision the factual situation in this case, i.e., the situation where a police officer is accused of misconduct, voluntarily resigns for an ostensible reason which would not result in revocation but thereby waiving his due process through the employment termination process, has his certification placed in inactive status, and then has his certification revoked based upon an ex parte unilateral report by the employing agency to KLEC.

As previously noted, Pangallo was a member of the Marine Reserves when he sought employment with the NPD. As part of the employment process, he was asked questions about his reserve status. According to the October 2, 2000, NPD letter to the KLEC, Pangallo stated that he was meeting his reserve obligations and had never been disciplined. Pangallo was then hired, and after completing training became certified. After Pangallo was certified, he was discharged from the Marine Reserves on other than honorable conditions.[4]

The October 2000 letter also stated that, in investigating Pangallo's discharge from the Marines, NPD had discovered that Pangallo had not been attending drill meetings. NPD concluded that therefore, contrary to what Pangallo had stated on his employment application, he was in fact not meeting his reserve obligation.

After the above information came to light, representatives of NPD confronted Pangallo with this information and gave him the opportunity to resign, which he accepted. Although the appellate record does not contain a copy of Pangallo's resignation letter, NPD's October 2, 2000, letter specifically states that Pangallo resigned for "personal reasons."

The October 2000 letter to KLEC stated as fact that Pangallo had misrepresented his reserve status to the Department upon his initial employment and at least once during his employment. Pursuant to KRS 15.386(4)(b), one ground for revoking a police officer's certification is when the officer "has been separated from an enforcement agency for ... willful falsification of information to obtain or maintain certified status."[5] Although the letter specifically stated that Pangallo had re-

---

4. Interestingly, such a discharge will prevent someone from becoming certified, *see* KRS 15.382(9), but the same discharge received by a certified officer does not affect that officer's certification as long as he remains employed.

5. Under the 2002 amendments, KRS 15.392(2) provides that "If the person has been separated for any reason justifying revoked or denied status pursuant to KRS 15.386, the council shall revoke the person's certification."

signed, i.e., had been separated from the agency, for personal reasons, nevertheless, KLEC revoked Pangallo's certification. Pangallo sought a review of that decision but was denied a hearing. KLEC determined that it did not have the power to hold a hearing based upon the statutory provisions that "[t]he employing agency's findings of fact and evidentiary conclusions shall be deemed final," KRS 15.392(4), and because "[t]he counsel shall not accept or hear complaints," KRS 15.392(5).

We agree with the Appellees that when Pangallo resigned, he waived his right to question the termination of his employment and the waiver was valid. *Redmon v. McDaniel*, Ky., 540 S.W.2d 870 (1976). Pangallo has failed to state any facts which would support his allegation that any actions by NPD representatives in requesting his resignation rise to the level of coercion or duress. Rather, as in *Redmon*, it appears that any threat against Pangallo was a mere threat to exercise a legal right made in good faith; namely, a threat to terminate Pangallo for willful falsification of information to obtain or maintain certified status. Clearly NPD possessed the right to pursue such termination procedures. *Id.*

However, Pangallo's certification was not revoked merely because he resigned from his job. In fact, KRS 15.386(4) does not authorize the revocation of an officer's certification merely for a resignation for personal reasons. Pangallo lost his certification because KLEC accepted NPD's assertion that he had made false statements to get, and later to maintain, his job. In order for KLEC to be statutorily authorized to take that action, Pangallo must have been separated from his job for that reason. KRS 15.386(4)(b). However, the record supports only that Pangallo was separated from his job because he voluntarily resigned, and that the resignation was the reason for his separation from NPD.

Although Pangallo's resignation papers are not part of the record, it is fair to infer that the papers do not specifically concede the misconduct charges against him or specifically waive the right to challenge what the reason for his termination might have been if he had not resigned. Indeed, one of Pangallo's primary motives in resigning was probably to avoid termination for misconduct and maintain a "clean record." This is borne out by the October 2000 letter which specifies that Pangallo resigned for "personal reasons."

Further, even if we have incorrectly deduced the content of Pangallo's resignation letter, we must nevertheless infer that Pangallo did not specifically waive his due process rights to refute NPD's allegation that he had engaged in misconduct. The burden of proof is upon the person relying upon waiver. Waiver requires proof of a "knowing and voluntary surrender or relinquishment of a known right." Because this is a right with both constitutional and statutory underpinnings, proof of waiver must be clear and convincing. As such, while no formal or written waiver is required, statements and supporting circumstances must be equivalent to an express waiver to meet the burden of proof. *Greathouse v. Shreve*, Ky., 891 S.W.2d 387, 391 (1995). Here, the absence of resignation papers proving waiver, i.e., the absence of proof, works against KLEC.

In summary, the record before this court supports only that Pangallo was separated from NPD "for personal reasons," and the mere resignation of a police officer from his job for personal reasons would normally result in his certification being placed in inactive status pursuant to KRS 15.386(3). Further, Pangallo was never given notice or an opportunity to be heard

regarding the October 2000 allegations of misconduct, nor is there evidence in the record that he waived his right to these minimal due process rights. We are persuaded that the denial of these minimal procedures requires that we reverse the decision of the Circuit Court and remand for the entry of an order requiring KLEC to reinstate Pangallo's certification to inactive status.

Because we have disposed of this appeal on other grounds, we need not address Pangallo's claim that KRS 15.392(4) and KRS 15.392(5) are unconstitutional as written and/or as applied against the appellant.

For the foregoing reasons the order of the Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

ALL CONCUR.