RENDERED: SEPTEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000672-MR

LINDA HAWN                                                                  APPELLANT

v.

APPEAL FROM MASON CIRCUIT COURT
HONORABLE STOCKTON B. WOOD, JUDGE
ACTION NO. 17-CI-00149

CASCIO ENTERPRISES, INC., d/b/a
MCDONALD'S OF MAYSVILLE                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Linda Hawn appeals from the Mason Circuit Court's

judgment on a jury verdict in favor of Cascio Enterprises, Inc., d/b/a McDonald's

of Maysville ("Cascio") and from the resolution of post-trial motions. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In September 2016, Hawn entered the McDonald's of Maysville through a side entrance and went directly to the restroom. Hawn saw a worker (Crystal Boyd) with a mop and mop bucket to Hawn's left as Hawn turned right towards the restroom. Hawn later admitted to seeing a couple of wet floor signs when entering the McDonald's. But she said the floor between the side door and the restroom was dry, and she did not think the signs indicated that this area could be wet. Hawn exited the bathroom after a couple of minutes and saw Boyd with the mop and mop bucket again.

Hawn asserts that it looked like Boyd had been mopping the area Hawn would have to cross to reach the front registers. So, Hawn decided to exit through the same door she had entered and to buy food through the drive-through. After turning to exit, Hawn slipped and fell and hurt her left wrist. Hawn contends the floor was wet, having been mopped while she was in the restroom. (Boyd later denied that the floor was wet then or that she had just mopped it.) Hawn asserts she had no warning that the area between the restroom and the side door might be wet.

Boyd helped Hawn to a table and went to get a manager a few minutes later. Hawn asserts that Boyd dry mopped the area where Hawn fell before getting

a manager.  Boyd later denied dry mopping the area after Hawn fell but before she got the manager.

After Boyd went to get a manager,[1] Manager Vicky Jones talked with Hawn and called an ambulance for her.  While waiting for the ambulance, Jones filled out an incident report about Hawn's fall.  Jones wrote that Hawn said she fell due to not paying attention.  The ambulance took Hawn to the hospital and she was diagnosed with a fracture to her left wrist.  She had wrist surgery later.

Hawn filed suit against Cascio.[2]  She alleged that Cascio had been negligent or reckless in failing to maintain the premises in a reasonably safe condition, failing to warn invitees of unsafe conditions, and failing to take reasonable precautions to prevent foreseeable injuries.  And she requested a jury trial and sought compensation for damages including medical expenses and pain and suffering.

As the case proceeded to trial, the parties took depositions of Hawn, Boyd, and Jones and filed various pretrial motions.  Cascio filed a motion *in limine* to prohibit any reference to Boyd's criminal convictions (which were then over ten years old) and the trial court granted this motion prior to trial.  Hawn filed a motion

---

[1] From our review of the record, Boyd initially spoke to a manager other than Vicky Jones.

[2] Hawn also named the national McDonald's Corporation as a plaintiff in her complaint, but the McDonald's Corporation was voluntarily dismissed by agreed order a couple of months later.

to have certain statements made by Jones in her deposition to be considered judicial admissions by Cascio. The trial court denied this motion at trial.

At trial, Hawn, Boyd, and Jones all testified, including reviewing surveillance video footage.[3] Hawn admitted that the video showed three wet floor signs placed in the Maysville McDonald's when she fell. The witnesses testified differently about how close the signs were placed to the area where Hawn fell and about what the signs communicated about which areas should be avoided due to possibly being wet. Hawn raised issues about whether some of McDonald's policies were violated. These policies included when to place wet floor signs and about not cleaning areas where customers fell before managers were summoned.

Hawn moved for a directed verdict on medical causation of her injury and on damages for medical expenses. The trial court denied the directed verdict motion on medical causation. The trial court noted a lack of evidence that Hawn's medical expenses were unreasonable. Although declining to inform the jury that medical expenses were reasonable and necessary as a matter of law, the trial court's instruction on damages reflected the specific amount of medical expenses submitted by Hawn.[4] The trial court orally stated to counsel that if the jury did not

---

[3] From our review of the record, the clarity of the video footage was somewhat low.

[4] The trial court's instruction on damages states in pertinent part: "If you have found for the Plaintiff, you shall award the following: A. Reasonable and necessary medical expenses incurred, in the amount of $31,850.59." The instruction also allowed for the jury to make an additional award in Part B for up to $250,000 for "[p]ast pain and suffering, and mental

-4-

award this amount, the trial court would make sure the final judgment awarded all

Hawn's medical expenses if the jury found in her favor on liability.

Ultimately, the trial court entered a judgment in favor of Cascio based

on the jury's verdict. Eleven out of the twelve jurors had found that Cascio was

not liable, so the jury did not address damages. Hawn filed a motion for a new

trial, a motion to be allowed to contact jurors, and a motion to hold costs in

abeyance pending appeal. The trial court ruled that jurors could not be contacted

until after their jury term was over in early May and denied the other motions.

Hawn filed a timely appeal. Further facts will be set forth as necessary in this

opinion.

## I. No Reversible Error in Evidentiary Ruling Allowing Testimony About Medical Treatment of Witness Considering Admonition and Other Proof at Trial

A trial court's ruling on evidentiary matters is subject to an abuse of

discretion standard of review. *Goodyear Tire and Rubber Co. v. Thompson*, 11

S.W.3d 575, 577 (Ky. 2000).

Hawn contends that the trial court erred in allowing Boyd to testify

about Boyd's cancer treatment to bolster her credibility and in issuing an

admonition which Hawn claims vouched for Boyd's credibility. But, based upon

---

anguish." There was a space for the jury to fill in the amount it awarded for medical expenses next to the language in part A. And there was a space for the jury to fill in the amount it awarded for past pain and suffering and mental anguish next to the language in part B.

our review of the record and applicable law, any error in the trial court's ruling or admonition does not entitle Hawn to relief.

At trial, Hawn's counsel impeached Boyd by questioning her about statements made in her deposition which conflicted with her trial testimony. Cascio's counsel then had an opportunity to question Boyd and said, "I understand you are going through some medical treatment. Can you tell the jury what you're going through?" Hawn's counsel objected, stating, "I don't know what the relevance is."

The court then summoned counsel to the bench. Cascio's counsel claimed that Hawn's counsel had impeached Boyd three times and "beat up on her memory." Counsel for Cascio explained that Boyd was currently undergoing radiation treatment and had been undergoing chemotherapy at the time of her deposition. Cascio's counsel argued that Boyd's medical treatment was relevant to her credibility. Hawn's counsel said he had sympathy for anyone undergoing such treatment, but he asked whether there was a proper foundation to assert that radiation caused memory loss and whether a doctor would come in to testify.

The trial judge overruled the objection and stated:

> I don't know that I will require a physician to come in for
> that. I'm aware of a lot of people that have had chemo
> and radiation and it does affect them. If you—if you do
> bring this out, I would plan to tell the jury that they're not
> to consider that for any sympathy purposes, it's only for
> matters of memory and recollection. I will allow you to

ask it but again if you do, I'll give a brief admonishment to the jury it's not to be used for sympathy.

Hawn's counsel stated, "That's fine."

Cascio's counsel then asked Boyd to tell the jury about the medical treatment Boyd was currently undergoing. Boyd responded, "I have stage four breast cancer. I just finished my chemo, and now I'm starting my radiation." Cascio's counsel then asked if Boyd had been undergoing any medical treatment when her deposition was taken in September 2018. Boyd responded that she was then undergoing chemotherapy.

Cascio's counsel next asked, "If your deposition was taken on September 24, 2018, how long would that have been after the fall that occurred on September 16, 2016?" Boyd responded that she was not sure. Cascio's counsel next asked, "Would you agree 2016 to 2018, that's two years?" and Boyd said, "Yes."

Before anything else was asked or answered, the trial court then stated:

> Ladies and gentlemen, the purpose of this testimony— and you're not to consider it for any sympathy reasons on behalf of the witness, although we certainly all have sympathy for that. It's only brought up to—to address any memory or lapse in memory or so on. It's not meant to illicit sympathy.

Cascio's counsel then asked Boyd if she had been "testifying based upon her memory" and had not yet reviewed the video at her deposition, and Boyd responded this was correct. But Boyd never directly testified that her medical condition or treatment affected her memory.

After Cascio's counsel completed her questioning of Boyd, Hawn's counsel had an opportunity to question Boyd. He told Boyd he was sorry to hear she was undergoing cancer treatment and asked if she knew why no one had previously told him about her condition. She responded that she did not know. No further questions were asked of her at that time. Based upon our review of the record, Hawn did not request any additional admonition or other relief during or immediately following Boyd's testimony.

*Preservation of Issues Must Be Addressed*

Hawn's brief does not explicitly discuss how this issue and other issues were preserved for our review. However, an appellate brief must "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Kentucky Rule of Civil Procedure (CR) 76.12(4)(c)(v). Despite the lack of specific discussion about preservation, Hawn has cited to the record where she made her objection to admitting evidence of Boyd's cancer treatment.

-8-

Error in a trial court's ruling admitting evidence may be properly preserved by timely and specific objection. *See* Kentucky Rule of Evidence (KRE) 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence" unless a party's substantial right is affected and a timely, specific objection or motion to strike is made.). If an alleged error in ruling on evidence is not sufficiently preserved, relief cannot be granted unless the error is palpable, affects substantial rights, and results in a manifest injustice. KRE 103(a); CR 61.02. Even when an error in ruling on evidence is preserved, we may not grant relief if the error is harmless. CR 61.01.

*Issue of Admissibility of Evidence of Boyd's Cancer Treatment Preserved*

Hawn timely and specifically raised an objection to admitting Boyd's testimony about her cancer treatment on grounds that it was irrelevant. And in response to Cascio's argument that it was relevant because it affected Boyd's memory or credibility, Hawn also timely and specifically objected due to lack of supporting medical evidence. Hawn did not further object or move to strike Boyd's testimony about treatment after Boyd's testimony concluded without her discussing how her treatment affected her memory. But Hawn's earlier objection to evidence of medical treatment conveyed to the trial court her concerns about relevancy and lack of foundation. So, the issue of admissibility of the evidence is preserved.

*Issue of Insufficiency or Other Error in Admonition Is Not Preserved*

Hawn's counsel stated that the trial court's proposed admonition was "fine," and the trial court's actual jury admonition did not substantially differ from the proposed jury admonition. And after the admonition was given, Hawn did not request any further admonitions or ask the trial court to take back or clarify anything in the admonition. So, any concerns Hawn had with the admonition given were not raised to the trial court nor properly preserved for review. Thus, we review the content of the admonition given only for palpable error. *See* CR 61.02; KRE 103(a).

*Neither the Admission of Boyd's Testimony About Her Cancer Treatment nor Any Error in the Trial Court's Admonition Entitles Hawn to Relief*

Considering the totality of the evidence presented at trial (including video footage of wet floor signs and Hawn's admission that she saw wet floor signs in the McDonald's as she entered the restaurant), any error in the trial court's admission of Boyd's testimony about her cancer treatment was harmless even disregarding its admonition.[5] And any error in the trial court's admonition was not palpable. Despite Hawn's assertion that the trial court's admonition vouched for

---

[5] Kentucky precedent recognizes that a jury is presumed to follow a court's admonition. Whether the admonition is to totally disregard evidence or to consider it for limited purposes only (as here), the admonition is normally presumed to cure any error. *Benjamin v. Commonwealth*, 266 S.W.3d 775, 787-88 (Ky. 2008) (trial court's admonitions to totally disregard some hearsay evidence and to only consider other hearsay evidence for limited purposes presumed to cure any error).

-10-

Boyd's credibility, we construe it as more neutral in effect. It simply stated that Boyd's cancer treatment could be considered to address memory but not for sympathy. In short, any error in the trial court's handling of evidentiary issues relating to Boyd's cancer treatment does not entitle Hawn to relief pursuant to KRE 103.

## II. No Reversible Error in Trial Court Granting Motion *in Limine* to Exclude Evidence of Boyd's Prior Convictions

*Preservation of Issue and Applicable Standard of Review*

Hawn next contends that the trial court erred in granting Cascio's motion *in limine* to exclude evidence of Boyd's criminal convictions (which were more than ten years old). Again, Hawn does not specifically discuss how the issue was preserved for our review. But Hawn did file a response opposing Cascio's motion to exclude evidence of Boyd's convictions and arguing that the probative value of the convictions outweighed their prejudicial effect. The trial court granted Cascio's motion *in limine* before trial. The issue is thus preserved for our review. KRE 103(d) ("A motion in limine resolved by order of record is sufficient to preserve error for appellate review."); *Davis v. City of Winchester*, 206 S.W.3d 917, 919 (Ky. 2006) ("Appellant's objection to the motion *in limine* and the trial court's order of record sustaining the motion was sufficient to preserve the issue for review. KRE 103(d)."). We review this evidentiary ruling under the abuse of discretion standard. *Goodyear Tire*, *supra*.

Hawn has clearly preserved the general issue of the admissibility of Boyd's convictions, but perhaps not every specific argument on this issue. Hawn now argues in her brief (as she did in her motion for new trial) that it was unfair to allow Boyd to testify about her cancer treatment while not permitting counsel to question Boyd about her convictions.

The trial court had authority to reconsider its prior ruling as KRE 103(d) provides: "Nothing in this rule precludes the court from reconsidering at trial any ruling made on a motion in limine." Yet Hawn does not assert that she asked the trial court to reconsider its ruling about Boyd's convictions at trial after Boyd testified about her cancer treatment. She did not argue during trial that fairness dictated permitting inquiry about Boyd's convictions after allowing Boyd's cancer treatment testimony. So, this argument is not preserved for review.

*Trial Court Did Not Abuse Its Discretion in Its Pretrial Ruling Excluding Evidence of Boyd's Convictions*

KRE 609 allows for the impeachment of witnesses by evidence of convictions under certain circumstances. But KRE 609(b) prohibits admission of evidence of convictions more than ten years old "unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect." In making this determination, a trial court should consider factors such as the nature and age of the convictions, the nature of the case being tried, and the nature of the witness's testimony. *See generally Miller ex rel. Monticello Banking Co. v.*

-12-

*Marymount Medical Center*, 125 S.W.3d 274, 285-86 (Ky. 2004). And the court in

*Miller* indicated that excluding evidence of convictions older than ten years was

generally presumed proper:

> Note that the KRE 609(b) balancing test is the exact
> inverse of the KRE 403 balancing test. Under KRE 403,
> relevant evidence is admissible unless its probative value
> is substantially outweighed by its prejudicial effect.
> Under KRE 609(b), the evidence is inadmissible unless
> its prejudicial effect is substantially outweighed by its
> probative value.

*Id*. at 284.

Cascio's motion *in limine* to exclude Boyd's criminal history noted

her convictions from April 2001 and April 2005. So, these convictions were

almost eighteen years old and almost fourteen years old at the time of the January

2019 trial—well above the ten-year threshold in KRE 609(b).

The trial court explicitly considered several factors in *Miller*, *supra*, in

ruling on Cascio's motion *in limine* to exclude evidence of Boyd's convictions.

The trial court found that Boyd had placed her credibility in issue by denying that

she mopped the area where Hawn fell despite Hawn's claims that the surveillance

video showed otherwise. And it recognized that Boyd's testimony about cleaning

and mopping would be key in determining liability. The trial court found Boyd's

convictions for criminal possession of a forged instrument and robbery to be "more

indicative of untruthfulness/dishonesty than many other crimes" and found that

less prejudice would result in this civil case than in a criminal case. And although Boyd was not a party, the trial court found, "Ms. Boyd has a significant interest in the outcome of the case since her job performance here could have effect on this or future employment, depending on whether a jury determines her actions relating to her testimony contribute to a verdict against her employer." But it also took note of lack of evidence of other offenses indicating dishonesty since the convictions.[6]

Ultimately, the trial court determined that the probative value of Boyd's convictions did not outweigh their prejudicial effect because the nearly fourteen-year-old and nearly eighteen-year-old convictions "are not very probative" of Boyd's credibility. So, it granted Cascio's motion before trial.

Given the significant age of Boyd's convictions and the trial court's explicit consideration of applicable factors, we discern no abuse of discretion in the trial court's pretrial ruling to exclude evidence of these convictions. And we likewise discern no palpable error in the trial court's not changing course on this issue *sua sponte* after Boyd was allowed to testify about her cancer treatment.

---

[6] The trial court also stated: "Even though any subsequent misdemeanor dishonesty offenses may not themselves have been admissible, the Court would likely have considered them relevant toward the admissibility to [sic] the 2001 and 2005 convictions. Continuing dishonest conduct would likely have made the earlier felony convictions more probative of her current credibility.").

**III.    No Reversible Error in Trial Court's Not Allowing Parties to Contact Jurors Until Their Jury Terms Were Completed**

Again, Hawn does not explicitly discuss preservation in the manner prescribed by CR 76.12(4)(c)(v).  But she cites to the record in her brief where she filed a motion with the trial court to be allowed permission to contact jurors post-trial.  Having brought the matter to the trial court's attention in this manner, the issue appears properly preserved for our review.

A trial court's ruling on a request to interview jurors post-trial is subject to an abuse of discretion standard of review.  *See Cape Publications, Inc. v. Braden*, 39 S.W.3d 823, 826 (Ky. 2001) (applying abuse of discretion standard to trial court's denial of non-party newspaper's request to interview jurors after trial); *McQueen v. Commonwealth*, 721 S.W.2d 694, 701 (Ky. 1986) (determining that the trial court did not abuse its discretion in denying criminal defendant's motion to interview jurors about the effect of the court's dismissing one juror on their verdict).

In finding no error in denying the post-trial motion to interview jurors in *McQueen*, 721 S.W.2d at 701, the Kentucky Supreme Court quoted Kentucky Rule of Criminal Procedure (RCr) 10.04:  "A juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot."  Although there is no similarly explicit provision to this effect in our civil rules of procedure, Kentucky Supreme Court Rule (SCR) 3.130(3.5) provides in pertinent

-15-

part that: "A lawyer shall not: . . . (c) communicate with a juror or prospective juror after discharge of the jury if: (1) the communication is prohibited by law, local rule, or court order[.]" Thus, this rule recognizes a trial court's authority to prohibit or limit attorneys' communications with jurors.

Hawn's counsel contacted the trial judge's office after the trial to ask about procedures for parties to contact jurors after trials and was told no contact with jurors should be made until the jurors' term of jury service ended in early May. The trial had concluded in late January.

Hawn filed a motion to permit jury contact to identify potential issues for post-trial motions and appeal. Cascio filed a response objecting to the motion. Hawn's reply argued that the trial court lost authority to restrict access to jurors because the trial was completed and no post-trial motions involving the jury were pending. Hawn based this argument on the following quote from *Braden*, 39 S.W.3d at 827: "Once the trial is completed and the completion involves any role that the jury might assume in regard to post-conviction motions, the circuit court loses authority to restrict any access by or with jurors of any sort."

Following a hearing in late March, the trial court issued an order denying the request for contact with jurors until their terms of jury service expired on May 6, 2019, stating:

> This Court has long forbidden contact by the attorneys
> for parties with jurors who decided their cases, until the

-16-

jurors' four-month term of service is completed. The jury pool for Mason County is typically not large, and often the qualified jurors, after challenges for cause are heard, do not number many more than the 28 minimum required for criminal trials (12 jurors and 8 challenges for each of the Commonwealth and defense). The Court is concerned about the effect that inquiries by skilled advocates might have on juries who may yet have cases to try soon in time.

The trial court noted there had been no allegations of the verdict being by lot. It also noted that Hawn's counsel did not have other trials scheduled during that jury term but found that waiting until the jury term was over would not be unduly burdensome. It found the *Braden* case distinguishable because it did not involve a party's request to contact jurors, but instead a request to contact jurors on behalf of the press. The trial court also construed Hawn's quote from *Braden* as dicta. It then concluded, affirming its practice against attorneys contacting jurors until the jury term of service was over.[7] It also found that any information obtained would be problematic due to *ex parte* discussions and could not be used to obtain a new trial and that no prejudice could be shown from the relatively short delay.

Hawn cites nothing indicating that the trial court could not prohibit her attorneys from contacting jurors until their jury term was over. Despite her citation of the *Braden* case in her appellate brief, the discussion therein clearly

---

[7] Although the trial court referred to having a long-standing "rule" to this effect, we are not aware of this being incorporated into the written Local Rules of Practice and Procedure of the 19th Judicial Circuit (including Mason Circuit Court).

pertained to press requests to interview jurors and not requests by parties or their attorneys. *See Braden*, 39 S.W.3d at 826 ("We must distinguish between contact with jurors by the news media and contact by parties or attorneys who took part in the trial or are involved in the appeal.").

Hawn cites no authority specifically recognizing a party's or attorney's right to contact jury members post-trial in time to interview jurors before deadlines for new trial motions and appeals expire. Considering the trial court's articulation of legitimate concerns with maintaining adequate numbers of qualified jurors, we discern no abuse of discretion in the trial court's denying Hawn's motion to permit post-trial contact with jurors until their jury terms expired a few weeks later.

## IV. No Reversible Error in Denying Requests to Treat Jones' Deposition Statements as Judicial Admissions

"Whether a statement is a judicial admission is a question of law" subject to *de novo* review on appeal. *Witten v. Pack*, 237 S.W.3d 133, 136 (Ky. 2007). A judicial admission is defined as "a formal act of a party (committed during the course of a judicial proceeding) that has the effect of removing a fact or issue from the field of dispute[.]" *Id.* (citation omitted). Judicial admissions are conclusive against a party and may support a dispositive resolution such as a directed verdict. A party's testimony can only be a judicial admission if it is

"deliberate and unequivocal and unexplained or uncontradicted" and judicial admissions must be narrowly construed. *Id.* (citation omitted).

Hawn contends that the trial court erred in not treating three statements made by Jones in her deposition as judicial admissions. First, Hawn alleged that Jones made a judicial admission of a lack of wet floor signs indicating that the direction Hawn was traveling in (from the restroom to the side door) was wet. But the trial court stated at a hearing the morning of trial that Jones did not clearly admit to such a lack of wet floor signs by responding "no" to the question, "But as far as you recall, there were no wet floor signs indicating that the direction Mrs. Hawn was traveling, was wet?" The trial court orally noted that the "as far as you recall" language in the question made the simple "no" in response somewhat equivocal and not conclusive. (Also, Cascio argues in its brief that the language of the question and answer make it unclear whether Jones meant there were or were not floor signs indicating the direction Hawn was traveling in was wet.)

Second, Hawn argued that Jones admitted that placing a wet floor sign before sweeping was a violation of McDonald's policy,[8] citing a portion of Jones' deposition:

> Q. All right. If she [Boyd] had placed a wet floor sign
> out, what would she normally have in her hand?

---

[8] While the national McDonald's Corporation was voluntarily dismissed from Hawn's suit, it is not clear whether Jones was testifying about policies of the national McDonald's Corporation or policies of the local McDonald's restaurant in Maysville (which was operated by Cascio).

-19-

A. Well, sometimes they would put a wet floor sign out before they sweep, because right there, in that section right there, it looked like she had a dust pan.

Q. Okay. And that's a violation of the policies and procedures, isn't it?

A. You're supposed to put it out before you start mopping, yes.

But the trial court interpreted the cited deposition testimony as meaning only that McDonald's policy required placing a wet floor sign before mopping—not that placing a wet floor sign before sweeping was against policy. (Apparently, employees generally swept right before mopping.) The trial court determined that Jones had not made a clear, unambiguous statement that placing a wet floor sign before sweeping was a violation of McDonald's policy. So, it did not consider this portion of Jones' deposition testimony to be a judicial admission.

Third, Hawn asserted that Jones made a judicial admission in her deposition testimony that Boyd cleaned the area where Hawn fell after the fall but before notifying management, thus violating McDonald's policy. Hawn based this assertion on Jones' testifying in her deposition while watching the surveillance video:

Q. So she's [Boyd] cleaning this area before any other McDonald's employees come back there, isn't she?

A. Yes.

Q. She supposed to do that?

-20-

A. No.

Q. Is that a violation of McDonald's policies and procedures?

A. Yes. She should have got a manager.

The trial judge reserved ruling on whether this third portion of Jones' deposition testimony was a judicial admission. He explained that if Boyd had cleaned the area after Hawn fell but before notifying management, that would obviously make evidence harder to obtain. So, the trial court reserved ruling on this alleged admission to see what the testimony indicated.[9] If Hawn later requested a ruling on this issue for preservation purposes, this was not brought to our attention in Hawn's brief.[10] As Hawn's brief states that the trial court did not treat any of the three asserted matters as judicial admissions, either the trial court later denied this last request for a judicial admission based on the testimony presented or it never made a definitive ruling.

During the end of the judicial admission discussion the morning of trial, Hawn's counsel noted that Jones could be impeached if her trial testimony

---

[9] From our review of the hearing, it is not totally clear whether the trial court was referring solely to Jones' testimony (such as whether she believed the video to show Boyd cleaning the area or what the alleged policy or violation entailed) or to Boyd's testimony (whether she admitted to cleaning the area between the fall and summoning management).

[10] Our precedent states that "a failure to press a trial court for a ruling or an admonition on an objection or on a motion for relief operates as a waiver of that issue for purposes of appellate review." *Perkins v. Commonwealth*, 237 S.W.3d 215, 223 (Ky. App. 2007).

-21-

conflicted with her deposition testimony. From our review of the record, Hawn's counsel questioned Jones thoroughly when her trial testimony conflicted with her deposition testimony.

Cascio argues in its brief that the questions were asked in an unclear manner so that the meaning of Jones' response is unclear. It points out that Jones testified at trial that the policy did not require notifying management of falls if the customer asks to be left alone as it claims Hawn did.

From our review of the record, we agree with the trial court that the statements made in Jones' deposition testimony were not so unequivocal or conclusive as to be properly considered judicial admissions. So, we conclude there was no reversible error in the trial court's denial of Hawn's motion to have Jones' deposition statements treated as judicial admissions.

V.    **No Reversible Error in Trial Court's Denial of Motion to Stay Payment of Costs Pending Appeal**

Following the trial court's entry of judgment based upon the jury verdict, Cascio filed a Bill of Costs totaling over $3,000 for the costs, including transcribing depositions. Hawn did not file exceptions to the Bill of Costs. However, Hawn filed a motion to hold costs in abeyance after filing a motion for new trial. Noting that she was considering an appeal, Hawn requested that the "Bill of Costs be held in abeyance, with no interest accruing, until such time as all issues regarding motions for new trial and/or appeals have been resolved."

Following the filing of Cascio's response and a hearing, the trial court denied the motion.

Hawn clearly presented her request to have costs held in abeyance to the trial court, so the issue is apparently preserved for review. We have been unable to locate any authority indicating the applicable standard of review for the trial court's ruling on a motion to hold costs in abeyance. This appears to be a novel motion not explicitly provided for in our court rules.

Instead, CR 54.04 addresses payment of court costs and establishes certain basic procedures. CR 54.04(1) provides: "Costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." CR 54.04(2) provides in part that the prevailing party shall prepare a bill of costs for costs including "costs of the originals of any depositions . . . ." And CR 54.04(2) further provides: "If within five days after such service no exceptions to the bill are served on the prevailing party, the clerk shall endorse on the face of the judgment the total amount of costs recoverable as a part of the judgment."

As the trial court pointed out in its order denying the motion, Hawn cites no authority in support of her motion to hold costs in abeyance pending appeal. Hawn has not alleged that she lacks the ability to pay these costs. And her reply brief did not respond to Cascio's arguments that she waived endorsement of

costs by not filing timely exceptions or Cascio's suggestion that filing a supersedeas bond would be more appropriate.[11]

Under any standard of review, we cannot find any error in the trial court's denying Hawn's request to hold costs in abeyance based on the lack of authority for granting this request.

### VI. We Express No Opinion on Moot Issue of Whether Directed Verdict Should Have Been Granted on Medical Causation and Damages for Medical Expenses

Lastly, Hawn contends that the trial court erred in denying her motion for a directed verdict on the issues of medical causation of her injury and the reasonableness of her medical expenses. We have found no reversible errors in the trial court's handling of other issues, so we affirm the trial court's judgment based upon the jury verdict.

The jury found no liability on Cascio's part. In response to Interrogatory No. 1 in Instruction No. 5, the jury was asked, "Are you satisfied from the evidence that the Defendant failed to satisfy its duty and that such failure was a substantial factor in causing Plaintiff's injuries?" Eleven of the twelve jurors answered, "No," and, thus, determined that Cascio was not liable for Hawn's

---

[11] Cascio's brief states at page 22: "The Civil Rules of Procedure contemplate and require that judgments should be paid by way of supercedeous [sic] bond, CR 73.04, pending appeal which provides further support for the Trial Court's rationale in overruling Appellant's motion to hold the costs in abeyance." Hawn has not indicated whether she attempted to execute a supersedeas bond.

injuries. As we find no reversible error casting doubt on the validity of this verdict of no liability, the issue of whether a directed verdict should have been granted on Hawn's medical damages is moot and, so, we express no opinion on this issue.

## **CONCLUSION**

For the foregoing reasons, the judgment of the Mason Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Andrew K. Wheeler
D. Luke Vincent
Ashland, Kentucky

Michael C. Walker
Huntington, West Virginia

BRIEF FOR APPELLEE:

Lauren Crosby Thompson
Lexington, Kentucky